UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KEVIN SHEILS,

Plaintiff,

v. 9:05-CV-0135 (LEK/GHL)

SERGEANT BRANNEN; D. LACLAIR, Sergeant; K. LABOMBARD, Corrections Officer; P. EVENS, Corrections Officer; J. THOMAS, Corrections Officer; and B. FARNAN, R.N. II,

Defendants.

---

APPEARANCES: OF COUNSEL:

KEVIN SHEILS, 99-A-5444
Plaintiff, *Pro Se*
Attica Correctional Facility
Box 149
Attica, NY 14011

HON. ANDREW M. CUOMO
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

BRUCE J. BOVIN, ESQ..
Assistant Attorney General

GEORGE H. LOWE, UNITED STATES. MAGISTRATE JUDGE

**REPORT-RECOMMENDATION**

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally, Kevin Sheils ("Plaintiff") alleges that six employees of the New York State Department of Correctional Services ("DOCS") at Clinton Correctional Facility ("Clinton

C.F.")–Correctional Sergeant Michael Brannen, Correctional Sergeant Dale LaClair, Correctional Officer Kelly E. LaBombard, Correctional Officer Peter Evens, Correctional Officer James L. Thomas, and Registered Nurse Beth N. Farnan ("Defendants")–violated his rights under the First and Eighth Amendments when, between October 31, 2003, March 2, 2004, they (1) retaliated against him for filing grievances, (2) used excessive force against him, (3) subjected him to cruel-and-unusual prison conditions, and (4) were deliberately indifferent to his serious medical needs (which resulted from the use of excessive force). (*See generally* Dkt. No. 1 [Plf.'s Compl.].) Currently pending before the Court are Defendants' motion for partial summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 45), and Plaintiff's cross-motion for partial summary judgment (Dkt. No. 47). For the reasons that follow, I recommend that Defendants' motion be granted, and that Plaintiff's motion be denied.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Liberally construed, Plaintiff Complaint asserts four causes of action. (Dkt. No. 1, ¶¶ 2, 48-59 [Plf.'s Compl.].)

In his **First Cause of Action**, Plaintiff alleges that Defendants **LaBombard**, **Evens** and **Thomas** violated Plaintiff's Eighth Amendment rights when they **used excessive force** against him between approximately 5:25 p.m. and 6:00 p.m. on **October 31, 2003**, in Plaintiff's cell block at Clinton C.F. (*Id*. at ¶¶ 25-38, 40, 48-50.)

In his **Second Cause of Action**, Plaintiff alleges that Defendant **Brannen** violated Plaintiff's Eighth Amendment rights when he **failed to intervene** during the aforementioned use of excessive force by Defendants LaBombard, Evens and Thomas. (*Id*. at ¶¶ 25, 35-38, 40, 51-

53.)

In his **Third Cause of Action**, Plaintiff alleges that Defendants **LaClair**, **Brannen**, **Thomas** and **Farnan** violated Plaintiff's Eighth Amendment rights when they were **deliberately indifferent** to his serious medical needs in the following two ways: (1) by not providing him with needed medical treatment (for the open lacerations in his forehead, bleeding inside his left ear, extreme vertigo, his "severe neck injury," and his "extremely sore & lame jaw & teeth") between the evening of **October 31, 2003**, and the afternoon of **November 4, 2003**; and (2) by not periodically visiting him (to check up on the state of his health) in the Clinton C.F. S.H.U. (where he was confined following his wrongful disciplinary conviction arising from the events of October 31, 2003) from **October 31, 2003**, until his transfer from Clinton C.F., on or about **March 2, 2004**. (*Id*. at ¶¶ 39-46, 54-56.)[1]

In his **Fourth Cause of Action**, Plaintiff alleges that Defendant **Evens**, **LaBombard**, **Thomas** and **Brannen** violated his **First Amendment** rights when they took the afore-mentioned

---

[1] (*See* Dkt. No. 54, Part 8, at 18-20 [Ex. D to Plf.'s unauthorized Sur-Reply Papers, attaching Plf.'s medical records, showing that, on March 2, 2004, he was admitted to a prison medical center in Malone, N.Y., which is where Upstate C.F. is located, and that on March 5, 2004, he was admitted to the infirmary at Upstate C.F.]; Dkt. No. 54, Part 6, at 2 [Ex. B-1 to Plf.'s unauthorized Sur-Reply Papers, attaching Plf.'s handwritten letter to Donald Selsky, appealing from his disciplinary conviction at Clinton C.F., indicating that, as of the date of the letter (March 8, 2004) his address was Upstate C.F.]; Dkt. No. 54, Part 4, at 20 [Ex. A to Plf.'s unauthorized Sur-Reply Papers, attaching Plf.'s handwritten letter to Prisoners' Legal Services, dated April 27, 2004, indicating that at some point between February 16, 2004, and April 27, 2004, he had been transferred from Clinton C.F. to Upstate C.F.]; Dkt. No. 45, Part 4, at 8 [Ex. A to Brousseau Affid., indicating that Plf. ceased filing grievances at Clinton C.F. on March 5, 2004]; *compare* Dkt. No. 47, Part 9, at 6 [Ex. I to Plf.'s Opp. Papers, attaching Plf.'s Grievance No. CL-49869-04, which was filed at Clinton C.F. on February 25, 2004] *with* Dkt. No. 47, Part 9, at 8 [Ex. I to Plf.'s Opp. Papers, attaching Plf.'s letter of appeal to CORC from the denial of Grievance No. CL-49869-04, dated March 25, 2004, which reflects his then-current address as Upstate C.F.].)

adverse actions against Plaintiff in **retaliation** for having filed numerous administrative complaints and grievances between August 2, 2002, and October 31, 2003. (*Id.* at ¶¶ 19-21, 23-24, 28-31, 57-59.)

I note that, in construing Plaintiff's claims, I have afforded Plaintiff's Complaint the liberal construction that all pleadings must be afforded, under Fed. R. Civ. P. 8. *See* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). It is true that, *generally*, the pleadings of *pro se* litigants are construed with even more liberality than is required under Fed. R. Civ. P. 8.[2] However, the rationale for extending this special liberality to the pleadings of *pro se* litigants is that, generally, *pro se* litigants are unfamiliar with legal terminology and the litigation process. For this reason, "[t]here are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded [the] special [liberality or] solicitude" that is normally afforded *pro se* litigants.[3] For example, on several occasions, the Second Circuit has, quite appropriately in my opinion, diminished the special liberality normally afforded to a *pro se* litigant's pleadings, and/or indicated the acceptability of such a diminishment, due to the *pro se* litigant's extraordinary litigation experience.[4] (In addition to being unnecessary, I believe that an

---

[2] *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) ("[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest.") [internal quotation marks and citation omitted].

[3] *Koehl v. Greene*, 06-CV-0478, 2007 WL 2846905, at *3 & n.17 (N.D.N.Y. Sept. 26, 2007) (Kahn, J., adopting Report-Recommendation) [citations omitted].

[4] *See, e.g., Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, at *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-

extension of special liberality to the pleadings of extraordinarily experienced *pro se* litigants would tilt the scales of justice unfairly in favor of the *pro se* litigant and against his opponents.)[5]

Here, a review of on-line databases, including the Federal Judiciary's Public Access to Court Electronic Records ("PACER") System, reveals Plaintiff has filed at least **seventeen** federal or state court actions or appeals–specifically, **six** other federal court actions,[6] and at least

---

CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994); *see also Raitport v. Chem. Bank*, 74 F.R.D. 128, 133 (S.D.N.Y. 1977) [citing *Ackert v. Bryan*, No. 27240 (2d Cir. June 21, 1963) (Kaufman, J., concurring); *Saunders v. Ricks*, No. 07-1014, Order (2d Cir. Nov. 9, 2007) (dismissing appeal challenging, *inter alia*, revocation of *pro se* prisoner's special solicitude due to his extraordinary litigation experience, because appeal "lacks an arguable basis in fact or law"), *on appeal from* 03-CV-0598, Order (N.D.N.Y. filed Nov. 23, 2006) (Hurd, J.), *adopting*, Report-Recommendation, at 4-6 (N.D.N.Y. filed Aug. 14, 2006) (Lowe, M.J.).

5 *Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *7, n.34 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Edwards*, 2007 WL 748442, at *2; *Sledge*, 2007 WL 951447, at *3; *see also Hussein*, 1991 WL 221033, at *4 (concluding that experienced *pro se* litigant should no longer be afforded special leniency because continuing to afford him such leniency would be unfair to "numerous attorneys," whose time and energy had already been consumed by plaintiff); Jessica Case, "Pro se Litigants at the Summary Judgment Stage: Is Ignorance of the Law an Excuse?" 90 *Ky. L.J.* 701, 735-740 (Spring 2001) (discussing how extending special leniency to *pro se* litigants in some circumstances "distorts the adversarial system and the role of trial judges") [citing cases]; Julie M. Bradlow, "Procedural Due Process Rights of *Pro se* Civil Litigants," 55 *U. Chi. L. Rev*. 659, 672 (Spring 1988) (discussing how "extending too much procedural leniency to a *pro* se litigant risks undermining the impartial role of the judge in the adversary system") [citations omitted].

6 *See Sheils v. Byno*, 01-CV-1220 (N.D.N.Y.) (prisoner civil rights action, filed *pro se*); *Sheils v. Byno*, 02-CV-1252 (N.D.N.Y.) (prisoner civil rights action, filed by Plaintiff's counsel); *Sheils v. Rock*, 04-CV-0861 (N.D.N.Y.) (prisoner civil rights action, filed *pro se*); *Sheils v. Busse*, 05-CV-0399 (N.D.N.Y.) (prisoner civil rights action, filed *pro se*); *Sheils v. Flynn*, 06-CV-0407 (N.D.N.Y.) (prisoner civil rights action, filed *pro se*); *Sheils v. Minogue*, 06-CV-0482 (N.D.N.Y.) (prisoner civil rights action, filed *pro se*). I note that Plaintiff's claims in three of these actions arise from various events occurring on or before October 31, 2003, which are mentioned in his Complaint in this action but do not give rise to any claim in this action. *See Sheils v. Minogue*, 06-CV-0482 Complaint (N.D.N.Y. filed Apr. 18, 2006) (asserting procedural due process claims against R.J. Minogue, P. Ano, and D. Selsky, regarding disciplinary hearing

**eleven** state court actions or appeals.[7] However, I note that only **six** of those seventeen actions or appeals appear to have been filed *before* he filed the current action, on February 2, 2005.[8] Therefore, I find that no reason exists to diminish the sort of *special* liberal construction normally afforded to the pleadings of *pro se* litigants.

---

arising from the events of October 31, 2003); *Sheils v. Rock*, 04-CV-0861, Complaint (N.D.N.Y. filed July 21, 2004) (asserting claims of retaliation, excessive force and inadequate medical care at Clinton Correctional Facility between July 26, 2003, and August 8, 2003); *Sheils v. Byno*, 02-CV-1252, Complaint (N.D.N.Y. filed Oct. 2, 2002) (asserting claims of excessive force and inadequate medical care at Franklin Correctional Facility between 1999 and 2001).

[7] *See Sheils v. New York*, UID 2007-015-556, Claim No. 110349, Decision (N.Y. Ct. Cl., filed May 18, 2007) (dismissing claim alleging use of excessive force in prison); *Sheils v. New York*, UID 2007-38-503, Claim No. 107341, Decision (N.Y. Ct. Cl., filed Feb. 6, 2007) (claim seeking money damages for personal injuries while in prison); *Sheils v. New York*, UID 2006-032-045, Claim No. 110009, Decision (N.Y. Ct. Cl., filed May 15, 2006) (claim seeking money damages for personal injuries while in prison); *Sheils v. New York*, UID 2006-032-016, Claim No. 109882, Decision (N.Y. Ct. Cl., filed March 3, 2006) (claim alleging medical malpractice in prison); *Sheils v. New York*, UID 2006-015-540, Claim No. 105677, Decision (N.Y. Ct. Cl., filed Jan. 27, 2006) (claim alleging inadequate medical care in prison); *Sheils v. New York*, UID 2004-032-097, Decision (N.Y. Ct. Cl., filed Nov. 22, 2004) (claim alleging harassment and abuse by correctional officers); *Sheils v. Goord*, 792 N.Y.S.2d 641 (N.Y. App. Div., 3d Dept., filed March 17, 2005) (dismissing Plaintiff's Article 78 proceeding); *Sheils v. Selsky*, No. 96912, Memorandum and Judgment (N.Y. App. Div., 3d Dept., filed June 9, 2005) (dismissing Plaintiff's Article 78 proceeding); *Sheils v. County of Fulton*, 787 N.Y.S.2d 727 (N.Y. May 10, 2005) (denying Plaintiff's appeal from dismissal of his prisoner civil rights action); *Sheils v. County of Fulton*, No. 969209, Memorandum and Order (N.Y. App. Div., 3d Dept., filed Jan. 20, 2005) (affirming dismissal of Plaintiff's prisoner civil rights action); *Sheils v. County of Fulton*, Order (N.Y. Sup. Ct., Fulton County, filed Jan. 7, 2004) (dismissing Plaintiff's prisoner civil rights action).

[8] *See Sheils v. Byno*, 01-CV-1220 (N.D.N.Y.) (prisoner civil rights action, filed *pro se*); *Sheils v. Byno*, 02-CV-1252 (N.D.N.Y.) (prisoner civil rights action, filed by Plaintiff's counsel); *Sheils v. Rock*, 04-CV-0861 (N.D.N.Y.) (prisoner civil rights action, filed *pro se*); *Sheils v. New York*, UID 2004-032-097, Decision (N.Y. Ct. Cl., filed Nov. 22, 2004) (claim alleging harassment and abuse by correctional officers); *Sheils v. County of Fulton*, No. 969209, Memorandum and Order (N.Y. App. Div., 3d Dept., filed Jan. 20, 2005) (affirming dismissal of Plaintiff's prisoner civil rights action); *Sheils v. County of Fulton*, Order (N.Y. Sup. Ct., Fulton County, filed Jan. 7, 2004) (dismissing Plaintiff's prisoner civil rights action).

Having said all of that, I *do* find that there is no need to afford Plaintiff special leniency during the construction of his papers in opposition to Defendants' motion for partial summary judgment (and during the construction of his papers in support of his own cross-motion for partial summary judgment) since, by the time he filed his motion papers on January 1, 2008, he was an extraordinarily experienced *pro se* litigant. In any event, I note that such special leniency should not be used to enable a *pro se* litigant to avoid the procedural requirements imposed on litigants in opposing a motion for summary judgment (or in making such a motion).[9]

**B. Defendants' Motion for Partial Summary Judgment**

In their motion for partial summary judgment, Defendants expressly concede that "[t]riable issues of fact exist with respect to the Eighth Amendment excessive force claims asserted in the first and second causes of action." (Dkt. No. 45, Part 5, at 1 [Defs.' Memo. of Law].) Rather, Defendants move for partial summary judgment regarding only Plaintiff's Third and Fourth Causes of Action. (*Id.*) The sole basis for Defendants' request for dismissal of these two causes of action is their argument that the undisputed record evidence establishes that Plaintiff failed to exhaust his available administrative remedies with regard to the claims comprising those two causes of action. (*Id.* at 1-2, 3-7.)

More specifically, Defendants argue that the only grievance that Plaintiff filed following the events of October 31, 2003, was a grievance numbered "CL-49439-03." (*Id.* at 2.)

---

[9] *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . . we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law.").

Defendants argue that neither this grievance, nor the appeal that Plaintiff subsequently filed with regard to the grievance's resolution, raised any issue of inadequate medical care or retaliation. (*Id*. at 3, 5.) Finally, Defendants point out that the omission of any reference to either of these two issues is both conspicuous and inexcusable given that Plaintiff was, at the time, an "experienced grievance writer." (*Id*. at 3, 6.)

In opposition to Defendants' motion, Plaintiff focuses on a wide range of immaterial issues and arguments, ranging from a grievance he filed with regard to an assault that occurred *before* October 31, 2003 (specifically, an assault that occurred on July 26, 2003), to the legal standard governing motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), to a discussion of "but for" causation. (Dkt. No. 47, Part 2, at 7-19 [Plf.'s Opp. Memo. of Law].) Buried in his arguments are only two arguments worth focusing on.

First, Plaintiff essentially argues that Defendants are *estopped* from asserting the exhaustion defense for two reasons: (1) they made it difficult or impossible for him to exhaust his administrative remedies by physically and psychologically injuring him, and by causing him to be placed in S.H.U. and then transferred to a Mental Health Unit (where he had to take "additional psychotropic medications [soon after the incident]," and where he was "without his eyeglasses . . . and all . . . pens, pencils and the like until . . . November 12, 2003"); and (2) they placed him in fear of retaliation if he grieved the issues in question. (*Id*. at 10-14, 17-19.)

Second, Plaintiff essentially argues that *special circumstances* exist justifying his failure to exhaust for four reasons: (1) he was "confronted with irreparable injury" (and thus was entitled to "bypass" the administrative grievance process and "go directly to court"); (2) he was burdened with physical and psychological injuries that made it difficult or impossible for him to exhaust;

(3) he tried to informally exhaust his administrative remedies regarding the two issues in question by communicating with then-Governor George Pataki, the Assistant Commissioner of Corrections, the New York State Inspector General's Office, the Office of United States Senator Charles Schumer, and Prisoner's Legal Services; and (4) Prisoner's Legal Services never told him that he had to grieve the issues in question. (*Id*. at 9, 17-19; *see also* Dkt. No. 47, Part 1, ¶¶ 37-38, 41 [Plf.'s Rule 7.1 Statement].)

In reply, Defendants make three points. First, argue Defendants, Plaintiff did not file a response to Defendants' Rule 7.1 Statement of Undisputed Facts, and thus he has effectively admitted the factual assertions contained in that Rule 7.1 Statement. (Dkt. No. 49, Part 4, at 1, 3-4 [Defs.' Reply Memo. of Law].) Second, argue Defendants, Plaintiff's arguments in opposition to Defendants' motion effectively concede that he never filed a formal grievance regarding the claims giving rise to his Third and Fourth Causes of Action in this action. (*Id*. at 3.) Third, argue Defendants, none of the record evidence cited by Plaintiff in support of his special-circumstances argument in fact constitutes special circumstances justifying Plaintiff's failure to exhaust his available administrative remedies. (*Id*. at 4-7.)

In an *unauthorized* sur-reply, Plaintiff asserts arguments repeating in more detail his previous arguments, and arguing for the first time that his grievance numbered "CL-49439-03" did in fact fairly and plausibly present the issues raised in his Third and Fourth Causes of Action of his Complaint because that grievance requested that "those involved [be] suspended from DOCS forever." (Dkt. No. 54, Part 2, at 6 [Plf.'s Sur-Reply Memo. of Law].)[10]

---

[10] Specifically, in the submission in question, Plaintiff in part presents a *reply* on his cross-motion for partial summary judgment, and in part presents a *sur-reply* on Defendants' motion for partial summary judgment. (*See*, *e.g.*, Dkt. No. 54, Part 3 [presenting Plaintiff's

**C. Plaintiff's Cross-Motion for Summary Judgment**

In his cross-motion for partial summary judgment, Plaintiff appears to request the entry of summary judgment against Defendants on Plaintiff's Third and Fourth Causes of Action. (Dkt. No. 47, Part 1, at 16-17 [Title Page and Table of Contents of Plf.'s Memo. of Law in Support of His Cross-Motion]; Dkt. No. 47, Part 2, at 7-24 [Plf.'s Memo. of Law in Support of His Cross-Motion, requesting the entry of summary judgment against Defendants on Plaintiff's Third and Fourth Causes of Action].)

I say "appears" because Plaintiff is inconsistent about whether he is requesting the entry of summary judgment against Defendants on his *Fourth* Cause of Action, or simply requesting that the Court not dismiss that cause of action because a question of fact exists. (*Compare* Dkt. No. 47, Part 2, at 24 [Plf.'s Memo. of Law in Support of His Cross-Motion, stating, "Plaintiff respectfully submits to this tribunal that he be granted summary judgement [sic] on his . . . Fourth Cause[] of Action . . . ."] *with* Dkt. No. 47, Part 2, at 7, 19 [Plf.'s Memo. of Law in Support of His Cross-Motion, arguing that a question of fact exist for a "reasonable trier of fact" regarding his Fourth Cause of Action, and that the Fourth Cause of action "should be allowed to move forward"].)

Defendants oppose Plaintiff's cross-motion for partial summary judgment on both

---

belated Response to Defs.' Rule 7.1 Statement]; Dkt. No. 54, Part 2, at 1-7 [presenting legal arguments regarding Defs.' motion for partial summary judgment].) In my Order of May 8, 2008, I did *not* grant Plaintiff leave to file a *sur-reply* to Defendants' reply on their motion for partial summary judgment; I *merely* granted Plaintiff leave to file a *reply* to Defendants' opposition to his cross-motion for partial summary judgment. (Dkt. Nos. 50-53.) Moreover, I note that Plaintiff's submission–which includes a 9-page Affidavit, a 11-page Rule 7.1 Response, a 31-page Memorandum of Law, and approximately 142-pages of exhibits–far exceeds the 10-page limit for replies established by the Local Rules of Practice for this Court. N.D.N.Y. L.R. 7.1(b).

procedural and substantive grounds. (Dkt. No. 49, Part 3 [Defs.' Rule 7.1 Response]; Dkt. No. 49, Part 4 [Defs.' Opp. Memo. of Law].)

## II. APPLICABLE LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material[11] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[12]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."[13] The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some

---

11 A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

12 *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

13 Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

metaphysical doubt as to the material facts."[14] Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[15]

Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se*.[16] In the event the district court chooses to conduct such an independent review of the record, it should be noted that, to be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit must, among other things, not be conclusory.[17] An affidavit is

---

14 Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . ."); *Matsushita*, 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

15 *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

16 *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

17 *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir. 1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

conclusory if, for example, its assertions lack any supporting evidence or are too general.[18] Finally, even where an affidavit is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."[19]

---

[18] *See*, *e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . . It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

[19] *See*, *e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789, 2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony

## III. ANALYSIS

### A. Defendants' Motion for Partial Summary Judgment

As indicated above in Part I.B. of this Report-Recommendation, the only legal issue raised by Defendants' motion for partial summary judgment is whether Plaintiff has adduced any admissible record evidence that, before filing this action, he exhausted his available administrative remedies regarding the claims giving rise to the Third and Fourth Causes of Action asserted in his Complaint.

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[20] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[21] The Department of Correctional Services ("DOCS") has available a well-established three-step inmate grievance program.[22]

Generally, the DOCS Inmate Grievance Program ("IGP") involves the following

---

recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

[20] 42 U.S.C. § 1997e.

[21] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[22] 7 N.Y.C.R.R. § 701.7.

procedure for the filing of grievances.[23] First, an inmate must file a complaint with the facility's IGP clerk within twenty-one (21) calendar days of the alleged occurrence. If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen (16) calendar days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen (16) calendar days of receipt of the grievance, and issues a written decision within two (2) working days of the conclusion of the hearing. Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven (7) calendar days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within twenty (20) calendar days of receipt of the grievant's appeal. Third, a grievant may appeal to the central office review committee ("CORC") within seven (7) working days of receipt of the superintendent's written decision. CORC is to render a written decision within thirty (30) calendar days of receipt of the appeal. It is important to note that any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process.[24]

---

[23] 7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7; *see also White v. The State of New York*, 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

[24] 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York*, 198 F. Supp.2d 546, 549 (S.D.N.Y. 2002), *vacated and remanded on other grounds*, 380 F.3d 680 (2d Cir. 2004); *see, e.g., Croswell v. McCoy*, 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F. Supp.2d 431, 433 (W.D.N.Y. 2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him."); *Nimmons v. Silver*,

DOCS also has a separate and distinct administrative appeal process for inmate misbehavior hearings:

A. For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

B. For Tier II disciplinary hearings, the appeal is to the facility Superintendent pursuant to 7 N.Y.C.R.R. § 253.8; and

C. For Tier I violation hearings, the appeal is to the facility Superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

"An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable." 7 N.Y.C.R.R. § 701.3(e)(1). Similarly, "an individual decision or disposition resulting from a disciplinary proceeding . . . is not grievable." 7 N.Y.C.R.R. § 701.3(e)(2). However, "[t]he policies, rules, and procedures of any program or procedure, including those above, are grievable." 7 N.Y.C.R.R. § 701.3(e)(3); *see also* N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E.

Generally, if a prisoner has failed to follow each of these steps prior to commencing

---

03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.).

litigation, he has failed to exhaust his administrative remedies.[25] However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.[26] First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."[27] Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."[28] Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements."[29]

Regarding the first part of the three-part inquiry, I find that Defendants have adduced record evidence establishing, and Plaintiff has failed to adduce any record evidence controverting, that, during the time in question, the administrative remedies not pursued by

---

25 *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 347-48 (S.D.N.Y. 2002); *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002).

26 *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).

27 *Hemphill*, 380 F.3d at 686 (citation omitted).

28 *Id.* [citations omitted].

29 *Id*. [citations and internal quotations omitted].

Plaintiff were in fact "available" to him at Clinton C.F.[30] Implicit in this finding is a finding that the formal grievance that Plaintiff filed the weeks following the incident in question (i.e., Grievance No. CL-49439-03) did not fairly and plausibly present (for an appropriate response) the issues raised in the Third and Fourth Causes of Action of his Complaint.[31] To be clear, I make this finding expressly: the grievance's request that "all those involved [be] suspended from DOCS forever" did *not* fairly and plausibly present the issues raised in the Third and Fourth Causes of Action of his Complaint.[32] (To hold otherwise would be to render the exhaustion requirement virtually meaningless.) Similarly, Plaintiff's appeal from the denial of his grievance did not fairly and plausibly present the issues raised in the Third and Fourth Causes of Action of

---

30 (Dkt. No. 45, Part 4, ¶¶ 5-10, 12, 15-18 [Brousseau Affid.]; Dkt. No. 45, Part 4, at 4-16 [Exs. A-E to Brousseau Affid.]; *see also* Dkt. No. 54, Part 3, ¶ 6 [Plf.'s belated Rule 7.1 Response, admitting fact in question].)

31 I note that, "[c]onsistent with PLRA objectives, [the Second Circuit has] held that 'inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures.'" *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) [citing *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)]. The Second Circuit has also explained that "[i]n determining whether exhaustion has been achieved, [the Second Circuit has drawn an analogy between the contents of an administrative grievance and notice pleading . . . . [A] grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." *Brownell*, 446 F.3d at 310 [citing *Johnson*, 380 F.3d at 697]. Finally, I note that last year the Supreme Court clarified that rather than turn on the "conceivab[ility]" of an actionable claim," the Rule 8 notice-pleading standard turns on the "plausibility" of an actionable claim in that a pleader's "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]." *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955, 1965-74 (2007).

32 (Dkt. No. 45, Part 4, at 9-12 [Exs. B & C to Brousseau Affid.].) I note that Plaintiff's grievance said nothing of, and was interpreted as saying nothing of, retaliation, protected speech, or inadequate medical care. (*Id.*) I note also that the grievance did not even mention Defendant Farnan, the nurse whom he alleges failed to give him adequate medical care between October 1, 2003, and November 4, 2003. (*Id.*)

his Complaint.[33] Nor did Plaintiff's appeal of his disciplinary conviction fairly and plausibly present the issues raised in the Third and Fourth Causes of Action of his Complaint.[34] Nor did any of Plaintiff's subsequent grievances fairly and plausibly present the issues raised in the Third and Fourth Causes of Action of his Complaint.[35]

Turning to the second part of the three-part inquiry, I find that Plaintiff has failed to

---

[33] (Dkt. No. 45, Part 4, at 13-16 [Exs. D & E to Brousseau Affid.].)

[34] (Dkt. No. 54, Part 5, at 2-18 [Ex. B to Plf.'s unauthorized Sur-Reply]; Dkt. No. 54, Part 6, at 2-9 [Ex. B-1 to Plf.'s unauthorized Sur-Reply].)

[35] For example, Plaintiff filed a grievance at Clinton C.F. on February 25, 2004, requesting that he "have all [his] serious medical needs treated as if [he were] a patient [of] the [prison] ***physicians***['] . . . private practice and to have a CT [scan] or consult[ation] with a neurologist [conducted] before this condition worsens" (i.e., Grievance No. CL-49869-04). (Dkt. No. 47, Part 9, at 6 [Ex. I to Plf.'s Opp. Papers] [emphasis added].) In addition, Plaintiff filed a grievance at Upstate C.F. on August 13, 2004, alleging that a ***physician*** at Clinton C.F. incorrectly diagnosed the medical condition affecting his left ear at some point between October 31, 2003, and March 2, 2004 (i.e., Grievance No. UST-20948-04). (Dkt. No. 47, Part 9, at 9 [Ex. I to Plf.'s Opp. Papers] [emphasis added].) As an initial matter, neither of these two grievances in any way raises the retaliation claim asserted in Plaintiff's Fourth Cause of Action. Similarly, neither of these two grievances in any way raises the claim, asserted in Plaintiff's Third Cause of Action, that Defendants LaClair, Brannen, Thomas and Farnan–none of whom was a ***physician*** –failed to (1) provide Plaintiff with needed medical treatment (for the open lacerations in his forehead, bleeding inside his left ear, extreme vertigo, his "severe neck injury," and his "extremely sore & lame jaw & teeth") between the evening of October 31, 2003, and the afternoon of November 4, 2003, and (2) periodically visit him in the Clinton C.F. S.H.U. during his confinement there from October 31, 2003, to March 2, 2004. *See*, *supra*, Part I.A. of this Report-Recommendation. In any event, the second grievance (i.e., Grievance No. UST-20948-04) was not filed within 21 days of the events at issue in Plaintiff's Third Cause of Action (as required by DOCS' grievance rules). As a result, it is difficult to imagine how that grievance could possibly be deemed to be part of an adequate exhaustion of his administrative remedies. I note that, because that grievance was filed at a correctional facility other than Clinton C.F. approximately 9 months after the events in question, that other facility was not in possession of Plaintiff's medical records, and thus would not have even been able to *appropriately respond* to the claim raised in Plaintiff's Third Cause of Action. (Dkt. No. 47, Part 9, at 11 [Ex. I to Plf.'s Opp. Papers].) *See*, *supra*, note 29 of this Report-Recommendation (explaining that grievance must fairly and plausibly present the claim in question to enable DOCS to appropriately respond to that claim).

adduce any admissible record evidence that either (1) Defendants have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or (2) Defendants' own actions somehow inhibited Plaintiff exhaustion of remedies so as to estop Defendants from raising the plaintiff's failure to exhaust as a defense. With regard to the forfeiture issue, Defendants have asserted exhaustion as an affirmative defense in their Answer. (Dkt. No. 16, ¶ 16.) With regard to the estoppel issue, Plaintiff has adduced no admissible record evidence that either (1) during the days and weeks following the incident in question on October 31, 2003, he was mentally or physically *inhibited* from exhausting his administrative remedies, and more importantly (2) even if he was so inhibited, any Defendant *caused* him to be so inhibited. Plaintiff does not provide a citation to such record evidence in his Opposition Memorandum of Law.[36] Nor does Plaintiff provide a citation to such record evidence in any Rule 7.1 Response filed along with his papers in opposition to Defendants' motion.[37] As explained above in Part II of this Report-

---

[36] (*See generally* Dkt. No. 47, Part 2, at 7-19 [Plf.'s Opp. Memo. of Law].) I note that the Court should disregard Plaintiff's Sur-Reply Memorandum of Law because it violates the Local Rules of Practice for this Court. *See*, *supra*, note 8 of this Report-Recommendation. In any event, even if I were to consider that Sur-Reply Memorandum of Law, I would find that it provides no citation to record evidence of the facts in question. (Dkt. No. 54, Part 2, at 1-17 [Plf.'s Sur-Reply Memo. of Law].) Specifically, to the extent that Plaintiff's Sur-Reply Memorandum of Law contains any specific citations at all to the 142 pages of documents that comprise his Sur-Reply Exhibits A, B, C and D, those specific citations do not point to evidence that, during the time in question, Plaintiff was inhibited from exhausting his administrative remedies, or that, even if he was so inhibited, Defendants caused him to be so inhibited. (*Id.*; *see also* Dkt. No. 54, Parts 4-8.)

[37] (*See generally* Dkt. No. 47 [Plf.'s Opp. Papers, containing no Rule 7.1 Response whatsoever].) I note that Plaintiff's belated Rule 7.1 Response should be disregarded for violating the Local Rules of Practice for this Court. *See*, *supra*, note 8 of this Report-Recommendation. Among other things, by submitting his Rule 7.1 Response in an unauthorized sur-reply, Plaintiff has prevented Defendants from being able to reply to the asserted deficiencies contained in that Rule 7.1 Response, as they would have been permitted to do if he had submitted his Rule 7.1 Response in his response papers, as he was required to do under the Local Rules. In

Recommendation, the Court has no duty to *sua sponte* sift through the record to find proof of a factual dispute (even where the non-movant is proceeding *pro se*), and I recommend that the Court decline to do so. In any event, even if I were to *sua sponte* sift through the hundreds of documents that constitute the record, I would find no evidence that, during the days and weeks following the incident in question on October 31, 2003, Plaintiff was either mentally or physically *inhibited* from exhausting his administrative remedies, or that, even if he was so inhibited, Defendants *caused* him to be so inhibited.[38]

Indeed, to the contrary, the record rather clearly establishes that Plaintiff's mental condition in the second half of 2003 and the first half of 2004 was sufficient for him to be able to file grievances on the following dates: July 29, 2003, August 7, 2003 (two grievances); August 14, 2003 (two grievances); October 15, 2003, November 19, 2003; November 24, 2003; February

---

any event, even if I were to consider that Rule 7.1 Response, I would find that it contains no citations to record evidence that, during the time in question, Plaintiff was inhibited from exhausting his administrative remedies, or that, even if he was so inhibited, Defendants caused him to be so inhibited. (Dkt. No. 54, Part 3 [Plf.'s belated Rule 7.1 Response].) In particular, I find that Paragraph 7 of Plaintiff's belated Rule 7.1 Response–wherein he asserts that "defendants beat plaintiff so bad" that he was unable to grieve the issues in question–does not cite any record evidence actually establishing that, during the days and weeks following the incident on October 31, 2003, Plaintiff was either mentally or physically unable to grieve the issues in question, or that any such inability was caused by Defendants. (Dkt. No. 54, Part 3, ¶ 7 [Plf.'s belated Rule 7.1 Response]; *see also* Dkt. No. 54, Part 8, at 16-24 [Ex. D-2 to Plf.'s unauthorized Sur-Reply].)

[38] (*See generally* Dkt. No. 47, Parts 3-10 [Exs. A-K of Plf.'s Opp., containing no evidence of facts in question]; Dkt. No. 54, Part 1, AT 2-10 [Plf.'s unauthorized Sur-Reply Affid., containing no evidence of facts in question]; Dkt. No. 54, Parts 4-8 [Exs. A-D of Plf.'s unauthorized Sur-Reply, containing no evidence of facts in question].) I note that Plaintiff's purported "affidavit" is not notarized, nor does it contain the sort of certification required by 28 U.S.C. § 1746. (Dkt. No. 47, Part 1, at 2-6 [Plf.'s Opp. Affid.].) In any event, Plaintiff's affidavit asserts no facts establishing that he was inhibited from exhausting his administrative remedies, or that, even if he was so inhibited, Defendants caused him to be so inhibited. (*Id.*)

20, 2004; and March 5, 2004.[39] In addition, the record rather clearly establishes that his physical condition, and access to writing materials, was sufficient for him to be able to file four grievances, and at least one appeal, during the weeks and months following the incident on October 31, 2003.[40]

Turning to the third part of the three-part inquiry, I find that Plaintiff has failed to adduce any admissible record evidence that "special circumstances" exist justifying Plaintiff's failure to comply with the administrative procedural requirements. As explained above in Part I.B. of this Report-Recommendation, Plaintiff argues that special circumstances exist justifying his failure to exhaust for four reasons: (1) he was "confronted with irreparable injury" (and thus was entitled to "bypass" the administrative grievance process and "go directly to court"); (2) he was burdened with physical and psychological injuries that made it difficult or impossible for him to exhaust; (3) he tried to informally exhaust his administrative remedies regarding the two issues in question by sending written communications to then-Governor George Pataki, the Assistant Commissioner of Corrections, the New York State Inspector General's Office, the Office of United States Senator Charles Schumer, and Prisoner's Legal Services (who interviewed him on November 3, 2003); and (4) Prisoners' Legal Services of New York never told him that he had to grieve the issues in question.

With regard to Plaintiff's "irreparable injury" argument, merely being "confronted with irreparable injury" does not entitle a prisoner to "bypass" the administrative grievance process and "go directly to court." Plaintiff cites only one case in support of that proposition. (Dkt. No.

---

[39] (Dkt. No. 45, Part 4, at 4-16 [Exs. A-E to Brousseau Affid.].)

[40] (*Id.*; *see also* Dkt. No. 45, Part 4, at 13-14 [Ex. D to Brousseau Affid.].)

47, Part 2, at 9.) However, that case does not support that proposition. *See Republic Indus., Inc. v. Cent. Penn. Teamsters Pension Fund*, 693 F.2d 290, 293 (3d Cir. 1982). Rather, that case states that exhaustion is not required when, in pertinent part, "the nonjudidical remedy is clearly shown to be inadequate to prevent irreparable injury." *Republic Indus*, 693 F.2d at 293. In other words, under the case cited by Plaintiff, not only must one be confronted with irreparable injury, but the nonjudidical remedy must be clearly shown to be inadequate to prevent that irreparable injury. *Id*. Here, Plaintiff has not adduced record evidence establishing that either (1) he was, during the days or weeks following the incident on October 31, 2003, confronted with *irreparable* injury, or (2) the exhaustion process, which is initiated by the filing of a grievance within fourteen (14) days of the incident, was *inadequate* to prevent that irreparable injury. (I note that the mere fact that he waited more than a year and four months after the incident to file this action belies any argument that he needed to rush to court in order to avoid any irreparable injury.) Finally, in any event, the case cited by Plaintiff, which was issued by the Third Circuit Court of Appeals, is not controlling in this Circuit.

With regard to Plaintiff's argument that he was burdened with physical and psychological injuries that made it difficult or impossible for him to exhaust his available administrative remedies with regard to his inadequate-medical-care claim and retaliation claim during the days and weeks following the incident on October 31, 2003, I described the lack of record support for that argument above when I discussed the second part of the Second Circuit's three-part exhaustion inquiry. For the sake of brevity, I will not repeat that discussion here except to make two points. First, Plaintiff's mental condition in the second half of 2003 and the first half of 2004 was sufficient for him to be able to file ten grievances during that time period; and his physical

condition, and access to writing materials, was sufficient for him to be able to file four grievances, and at least one appeal, during the weeks and months following the incident on October 31, 2003. Second, the very notion that, during the relevant time period, Plaintiff was able to exhaust his available administrative remedies regarding his First and Second Causes of Action but not his Third and Fourth Causes of Action appears logically impossible to me.

With regard to Plaintiff's argument that he tried to *informally* exhaust his administrative remedies regarding his inadequate-medical-care claim and retaliation claim (e.g.., by communicating with the New York State Inspector General's Office, the Office of United States Senator Charles Schumer, and Prisoner's Legal Services), none of the written communications (or reports memorializing oral communications) provided by Plaintiff fairly and plausibly presented the inadequate-medical-care claim and retaliation claim asserted in this action.[41] Furthermore, to the extent that a few lines of those documents obliquely refer to Plaintiff's claim that his cell was searched following his participation in an Inspector General's Office investigation, Plaintiff has adduced no evidence that, during the days and weeks following the incident, he was laboring under any sort of *reasonable* misunderstanding of the legal requirement that he *formally* grieve his retaliation claim (and his inadequate-medical-care claim).

This last point brings us to Plaintiff's last argument that Prisoners' Legal Services never

---

[41] (*See*, *e.g.*, Dkt. No. 47, Part 9, at 17-18 [Ex. I to Plf.'s Opp. Papers, attaching Letter from Anita LaPan to Senator Schumer dated Nov. 3, 2003]; Dkt. No. 54, Part 4, at 14-15 [Ex. A to Plf.'s unauthorized Sur-Reply Papers, attaching Letter from Plaintiff to Prison Legal Services dated Feb. 13, 2004]; Dkt. No. 54, Part 6, at 34-38 [Ex. B-2 to Plf.'s unauthorized Sur-Reply Papers, attaching N.Y.S. Inspector General's Office Report of Interview with Plaintiff, dated Nov. 19, 2003].) I note that it is unclear to me how a letter from Plaintiff to Prisoners' Legal Services of New York, which is a private organization, can ever informally exhaust his available administrative remedies.

told him that he had to grieve the issues in question. There are three problems with this argument. First, for Plaintiff to be required under the PLRA to exhaust his available administrative remedies with regard to his Third and Fourth Causes of Action, he need not have been advised by Prisoners' Legal Services of New York (which I note is a private organization and not an administrative agency of New York State) that such exhaustion was required. Second, for a misunderstanding of the law to constitute special circumstances, that misunderstanding must be *reasonable* (for example, the misunderstanding must be shared by a federal district court).[42] Here, there is no record evidence that either (1) Plaintiff misunderstood the law during the time in question or (2) any such misunderstanding was *reasonable*. Third, the record evidence rather clearly establishes that, by the time of the incident in question, Plaintiff was experienced at filing grievances (including grievances alleging harassment and/or inadequate medical care), having done so on at least 13 occasions: April 3, 2001; July 9, 2001; November 19, 2001; June 6, 2002; June 24, 2002; July 15, 2002; June 11, 2003; July 29, 2003, August 7, 2003 (two grievances); August 14, 2003 (two grievances); and October 15, 2003.[43]

For all these reasons, I recommend that the Court grant Defendants' motion for partial

---

[42] See *Johnson v. Testman*, 380 F.3d 691, 696-98 (2d Cir. 2004) ("special circumstances" include plaintiff's "reasonable" but mistaken belief regarding grievance process); *compare Giano v. Goord*, 380 F.3d 670, 679 (2d Cir. 2004) (special circumstances justifying failure to exhaust consisted of plaintiff's reasonable interpretation of DOCS regulations, given federal district judge's recent endorsement of an identical interpretation) *with Shaheen v. McIntyre*, 05-CV-0173, 2007 WL 3274835, at *17 (N.D.N.Y. Nov. 5, 2007) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.) (no special circumstances because confusion about law was not reasonable).

[43] (Dkt. No. 45, Part 4, at 4-8 [Ex. A to Brousseau Affid.].) While I do not rely on this fact in making my finding that Plaintiff was familiar with DOCS' grievance requirements, I note that Plaintiff has been a guest of the State, off and on, since 1985. *See* NYS DOCS Inmate Lookup Service, http://nysdocslookup.docs.state.ny.us/kinqw00 (last visited Aug. 6, 2008).

summary judgment and dismiss Plaintiff's Third and Fourth Causes of Action due to his failure to establish that he exhausted his available administrative remedies regarding those causes of action. In addition, because Plaintiff's only claims against Defendants LaClair and Farnan are contained in his Third Cause of Action, I recommend that those two Defendants be dismissed from this action.

**B. Plaintiff's Cross-Motion for Partial Summary Judgment**

As stated above in Part I.C. of this Report-Recommendation, Plaintiff's cross-motion for partial summary judgment clearly requests the entry of summary judgment against Defendants on Plaintiff's Third Cause of Action, but that cross-motion is ambiguous about whether it is also requesting the entry of summary judgment against Defendants on Plaintiff *Fourth* Cause of Action or whether it is simply requesting that the Court not dismiss that cause of action because a question of fact exists.

In any event, this ambiguity does not matter for two separate reasons. First, because I have already concluded that partial summary judgment should be granted to Defendants on Plaintiff's Third and Fourth Causes of Action, Plaintiff's cross-motion for partial summary judgment on those two causes of action is moot. Second, even if the Court were to reach the merits of Plaintiff's cross-motion, I conclude the Court should deny that cross-motion because Plaintiff's Rule 7.1 Statement in support of the cross-motion is fatally deficient. (Dkt. No. 47, Part 1, at 7-15 [Plf.'s Rule 7.1 Statement].)

Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires that a Rule 7.1 Statement "set forth a specific citation to the record where [each material] fact is established." N.D.N.Y. L.R. 7.1(a)(3). Here, of the 44 factual assertions contained in Plaintiff's Rule 7.1

Statement, 8 of those factual assertions are not followed by any citation to the record whatsoever. (Dkt. No. 47, Part 1, ¶¶ 3, 9, 11-13, 16, 17, 29 [Plf.'s Rule 7.1 Statement].) Furthermore, the vast majority of the record citations provided by Plaintiff do not actually point to any admissible record evidence that establishes the facts asserted. (*See*, *e.g.*, *id*. at ¶¶ 1, 2, 4-6, 14, 15, 18, 21, 23, 31-41, 43.)[44] These deficiencies are not surprising to me since Plaintiff's Rule 7.1 Statement actually asserts that, with regard to each of the facts stated, there *does* "exist[] genuine issues to be tried." (*Id*. at 7.)

Local Rule 7.1 clearly provides that the "**[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion**." N.D.N.Y. L.R. 7.1(a)(3) [emphasis in original]. In any event, even if the Court were to deem Plaintiff's Rule 7.1 Statement as minimally sufficient under Rule 7.1, the sum total of the scant material facts established therein are controverted by admissible record evidence adduced by Defendants. (*See*, *e.g.*, Dkt. No. 49, Part 3, at ¶¶ 11-15, 17-18, 21, 23, 29, 32, 35 [Defs.' Rule 7.1 Response, denying facts asserted by Plaintiff and supporting the denials with accurate record citations].) As a result, the record does not support a grant of partial summary judgment in Plaintiff's favor.

For these reasons, I recommend that the Court deny Plaintiff's cross-motion for partial summary judgment.

[44] In addition, I note that, as Defendants correctly point out in their Rule 7.1 Response, several of the 44 factual assertions contained in Plaintiff's Rule 7.1 Statement are argumentative in nature or are not material to Plaintiff's cross-motion. (*See*, *e.g.*, Dkt. No. 49, Part 3, at ¶¶ 1-6, 39-40 [Defs.' Rule 7.1 Response].)

**C. Any Request by Plaintiff to Supplement Record During Appeal**

In light of Plaintiff's prolific nature as a litigant, I anticipate that, during his likely objections to this Report-Recommendation, he will attempt to supplement the record on Defendants' Motion for Partial Summary Judgment. In the event he attempts to do so, I respectfully recommend that the Court, in exercising its discretion on the matter, decline to permit him to so supplement the record.

The Second Circuit recognizes that the decision of whether or not to accept such evidence rests in the sound discretion of the district court. *See*, *e.g.*, *Hynes v. Squillance*, 143 F.3d 653, 656 (2d Cir. 1998) ("[W]e have upheld the exercise of the district court's discretion in refusing to allow supplementation of the record upon the district court's *de novo* review.") (affirming decision by Scullin, J.) [citations omitted]. In deciding whether or not a district court has abused that discretion in denying the supplementation of the record on appeal, the Second Circuit considers factors such as efficiency and fairness. *See Hynes v. Squillance*, 143 F.3d at 565 ("Considerations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration . . . .").

With regard to the efficiency consideration, I find that permitting Plaintiff (on appeal) to adduce evidence that was not presented before me would be an inefficient use of judicial resources, and indeed would frustrate the purpose of the Magistrates Act." *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992).

With regard to the fairness consideration, I note that the Fifth Circuit has suggested four factors that a court might consider in deciding whether to accept additional evidence after a magistrate judge's recommendation has been issued:

> (1) the moving party's reasons for not originally submitting the evidence; (2) the importance of the omitted evidence to the moving party's case; (3) whether the evidence was previously available to the non-moving party when it responded to the summary judgment motion; and (4) the likelihood of unfair prejudice to the non-moving party if the evidence is accepted.

*Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F,3d 847, 862 (5th Cir. 2003) [citation omitted]. Generally, these fairness factors are considered by Courts within the Second Circuit (and outside of the Second Circuit).[45] Here, I find that these four fairness factors–particularly the third and fourth factors–weigh against permitting Plaintiff to supplement the record on Defendants' motion for partial summary judgment during any appeal to the District

---

45 *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

Court from this Report-Recommendation. Plaintiff has had a full and fair opportunity to be heard on his claims, including a full and fair opportunity to (1) conduct discovery in this matter, and (2) respond with evidence and argument to Defendants' motion for summary judgment.[46] Defendants are entitled to have their motion decided on a level playing field, based on evidence and arguments to which they could properly reply.

For these reasons, I recommend that the Court, in exercising its discretion on the issue, deny any request by Plaintiff to supplement the record on Defendants' motion for partial summary judgment, during any objections to this Report-Recommendation.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for partial summary judgment (Dkt. No. 45) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's cross-motion for partial summary judgment (Dkt. No. 47) be **DENIED**; and it is further

**RECOMMENDED** that the Court, in exercising its discretion on the issue, **DENY** any request by Plaintiff to supplement the record on Defendants' motion for partial summary judgment, during any objections to this Report-Recommendation

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS**

---

[46] I note this action has been pending now since February 2, 2005, long past the eighteen months envisioned by Congress when the Civil Justice Reform Act of 1990 was passed. *See Adelman v. Hobbie*, 03-CV-0032, 2006 WL 2639359, at *8 (N.D.N.Y. Sept. 13, 2006) (Sharpe, J., adopting Report-Recommendation by Treece, M.J.) (dismissing *pro se* civil rights action for failure to prosecute under Rule 41[b] in part because "[o]ver three years has passed since this litigation was commenced, well past the eighteen months envisioned by Congress when the Civil Justice Reform Act of 1990 was instituted").

**from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day)**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: August 12, 2008
Syracuse, New York

George H. Lowe
United States Magistrate Judge